Okay, the next case on the docket is 5-14-0033, Illinois Insurance Guaranty Fund v. Chicago Insurance Co. et al. Counsel, are you ready to proceed? Good morning, Your Honor. May it please the Court, Counsel. My name is William Hardy. I represent the Chicago Insurance Company in this case. We have before us today a very straightforward legal issue. I think we're in agreement on the law. The law is that a noble law, a noble review applies. There's no deference that's given to the trial judge in this case. And I think we're also in agreement that the issue of whether there's a duty to defend Dr. Hucker in this case involves looking at the four corners of the underlying complaint and comparing it to the insurance policy that is issued in this case. That's what we've done in our brief. That's what we've done in our reply brief. That's what we did in the law. Dr. Hucker has not been insured under this policy, period. He's not been insured, and there's no obligation to defend him. Chicago Insurance Company's defendant is insured, women's care. Is it true that women's care is covered for vicarious liability for employees? Yes. But that doesn't have anything to do with the issue of whether Chicago Insurance Company has an obligation to defend Dr. Hucker. The facts in this case are undisputed. Dr. Hucker left the practice in late 2000. He started his own practice with another doctor who left women's care at the same time, starting January 1, 2001. He got his own coverage. Claims made coverage. The suit was filed later. CIC, my client, issued a policy to women's care. There were individual applications for the physicians who were employed by women's care at that time. They're all named insurers, period. There was another doctor who joined the practice, I think, in July of 2002. A premium was paid for Dr. Wasserman, and he was added to the policy. Simple, straightforward. They're all named insurers under the policy. Well, the question is whether or not Dr. Hucker is an insurer. It's right in the policy. Who's insured? And if we go up to it, it's on 842 of our appendix. First, it's insured. You have A, the entity or person named in Item 1 of the Declarations is a named insurer. C, any physician or surgeon who, but the other ones don't apply, B, local tenants. And D, the ones that were agreed to in the trial court were A, C, and E. C doesn't apply because he wasn't a physician or surgeon who was hired during the policy period. He left the practice long before that. Now, the only argument that I see in their brief where they attempt to argue that there's some ambiguity is based on 2E, where it says any employees of the named insurer other than a physician or surgeon, but only while acting within the scope of his or her duties as such. It says other than a physician or surgeon. Right. And Dr. Hucker was a physician. Absolutely. It could not be clearer. And, of course, that has to be read in context with the other languages we argue in our reply brief. So it's impossible to conclude when you compare the underlying policy or the underlying complaint with the four corners of policy that Dr. Hucker is an insurer of the policy. And your argument is if he's not an insurer, that's the end of the analysis. That's the end of the analysis.  And he's not an insurer. Now, what the funds is trying to do here is, I refer to it as throw all this mud up against the wall, but really what they're doing is they're focusing on the act that triggers coverage for women's care instead of focusing on the issue of who's an insurer under the plain language of the policy. What they're saying is, look, the wrongful act, which as we point out is not even mentioned in the statute, the underlying policy, the wrongful act that triggered coverage is the alleged malpractice that happened when Dr. Hucker treated the patient in the underlying case. But that has nothing to do with the issue of whether there's coverage for Dr. Hucker under this policy. Could the Women's Center, I'm sorry, I've got that not exactly right, have bought tail coverage that would have covered any prior surgeon or doctor who worked there in the CIC policy? I suppose they could if the parties had agreed to contract for that. That's the problem with this. I mean, if you look at the impact of this decision, you have doctors, medical groups, hospitals that bargain back and forth all the time about what happens when you leave the practice. Do you buy your own tail coverage or do we have to provide the tail coverage? The bottom line is Dr. Hucker had to get his own tail coverage. He got his own tail coverage. So the issue here in terms of my client is my client issued a policy. It issued it based on applications for women's care and these other individual doctors, and they issued prior acts going back to coverage, going back for those individuals and for women's care. But there's no mention of Dr. Hucker. It's not there. And the reason is because he was obligated to get his own claim to make the policy. Now, what they're trying to say is, look, let's just look at the act, the wrongful act, and if there's an obligation to defend the suit, then there's an obligation to defend any claim to the suit. Well, it's got to be a claim against the insurer. I mean, if you accept that argument, any time an insurance company defends its insurer, it would have to defend everyone named in the suit. It just doesn't make any sense. These arguments, this attempt to focus on an act as opposed to the policy language itself, is, I think, where the trial court perhaps ran awry. Judge Gleason, in this case, entered the order, and it was a short order stating that there's a duty to defend, and I think he just concluded that, well, there must be a duty to defend in there somewhere. The fact of the matter is there's nothing in the policy that creates that. CIC did exactly what it was supposed to do in this case. It provided defense to its insurer, and it did so fully in accordance with the policy. It defended women's care. The funds council points out in their brief that it settled the case. We don't think that has any relevance to this issue here, but this court can take judicial notice that both the moral and the women's care settled, and there was a dismissal of prejudice against them. Dr. Hucker was voluntarily dismissed, and it was never refiled against Dr. Hucker. Quite frankly, I don't understand what this case is all about. This is a straightforward legal issue, and if you apply the law, not the law without the word insured in there. If you look at the way the fund has portrayed this, they say you look at the policy, and you construe it against the insurer and strictly against the insurer to determine whether coverage exists. Well, all those cases talk about coverage to the insurer. They take out the language insured. This is a simple case, and I really don't have anything else to add other than what's in our brief. Unless the court has any questions, I would ask that the case be reversed in their handling of directions to their judgment in favor of Chicago Insurer Capital. I will reserve the remaining time for rebuttal. Thank you, counsel. Eppley. Good morning, Mr. Hardy. Justice, this is Jim Vest, and I represent the Illinois Guarantee Fund. And I guess what this case is about, I guess I would start on what the purpose of the Illinois Guarantee Fund is. And I think by statute we all know that it is the source of last resort, the last person that should pay. Well, you don't get to Section 546 or any of that unless there is other insurance coverage. I mean, the section says if there's other coverage, that has to be applied, but we don't even get there if there's no other coverage, right? But I think what happens is that there is other coverage, because what we're talking about now is was there a duty to defend, okay? And when you get under the case law, was it so clear, was it so obvious, was there no doubt at all that there was a duty to defend when they did not defend? Because they didn't file a deck action. They didn't file defend under a reservation of rights. So I think it's important that we have a statutory obligation to file a case like this to make sure that if there is other coverage that would be applicable or other obligations, they have to go first. So I think that's the first point I'd like to make, is that I think the trial judge, a court's judgment should be affirmed based on just the duty to defend rules, all right? And the duty to defend rules are what we have cited in our brief. They have to be, there has to be no doubt. It has to be clear that there's no duty to defend. So you look at the allegations of this complaint underneath, and only really two things are alleged. One, that Dr. Hooker was an employee of Women's Care and that he committed malpractice on this date, all right? There's nothing else in that complaint, all right? There's nothing in the complaint that says, well, he had left the practice, that he didn't file an application, that they didn't get additional premium. So the question is, what in the complaint dictated that they did not have a duty to defend? Well, there's nothing in there. So they're relying on all these expensive evidence. So when you have expensive evidence. What's in there is that it occurred on a date that the CIC policy did not list the doctor as an insured during that claim period. I mean, that's in the complaint, right? It occurred when the incident happened, all right? That's all that it alleged. It happened. Well, I know, but if you're looking at the policy and the complaint, the four corners of the complaint, and we've got a policy, and it insures somebody for a specific period of time, and the incident did not occur during a time when that individual is a named insured under the policy, then certainly they can make their argument that he was not an insured. Well, they can only – I would say that you can only make that argument if they had an incurrence policy. But that's the other point that's missed. Like you said that they have tail insurance. Well, what's completely ignored in all this is this is a claims-made policy that had a retroactive date. So the retroactive date went all the way back to August of 1999. So that means what has to happen is that the act has to be after August of 1999, but the claim has to be made during the policy period, all right? And that's exactly what happened in this case. The act – The specific doctors who were named in the policy had specific retroactive dates. Is that right? No. The policy in itself covered retroactive dates because when you have a retroactive date, that contemplates that you're going to have to pick up claims for people who are no longer – That's the whole purpose of a retroactive date. If they were going to limit it like they're arguing, let's just say, well, it has to be the people that are listed on the policy. It has to be the people that filed an application. That's an incurrence policy. That's not what we have. We have a – Well, I mean, on the schedule it has – it names MDs and PCs, and then it gives a prior acts date. Right. And that's what you're talking about as far as the tail. Right, exactly. And so specific – I mean, the entity is named insured. Right. And in the policy it says who are the insurers, which reading the plain language does not appear to cover this other doctor, but there is specific tail coverage back to certain dates, I guess during the time they've worked there, for specific people. Right. But all these – Okay, so my question is, you know, could the entity have bought tail coverage for this doctor who no longer worked there? They could have, couldn't they? Right. But they didn't. But I think they did because what they did is they bought an insurance policy that covered when the claim was made. So if he's not specifically named, then you've got to go to the language of the policy to somehow sweep him in there. Exactly. And under the definitions of who is an insured – Well, what that misses, though, in the next point, which we cover in the brief, is the insuring agreement. And I think it's very important that we look, and that's what page 7 of the brief you can quote, is the insuring agreement. And it says the company will pay on behalf of an insured all sums with the insured shall be legally obligated. And then it goes on basically to cover malpractice. But then it says resulting from the rendering or failure to render professional services by the insurer. Okay. So I submit what they're arguing here in the briefs in court is not what their insuring agreement says. Because if that's true, then it would have ended right there. If it's limited to an insurer, their coverage, there would have been a period. Okay. But what they did, they added in this clause, are any person for whose acts the insured is legally responsible. Okay. Let me just stop you there. Okay. And CIC did defend the entity and pay damages. Right. Right? But just as the insuring agreement says, including for persons whose acts the insured is legally responsible, but they did that because of the respondent superior. Well, that's the whole point. They did not defend Dr. Roman, even though they had this clause, are any person for whose acts the insured is legally responsible. So under their whole argument, that clause would not be necessary because it would happen with the insurer, because it should be limited to an insurer. So by putting that in there. Okay. I'm sorry again, but this is under coverage, the insuring agreement. What does that have to do with the duty to defend? Well, it has to do with the duty to defend because you have two classes of people. You have the insurer, which they feel has to follow in this provision, persons insured, but also you have this other class, for any person whose acts, and it says or, O-R, for any persons whose acts the insured is legally responsible. So you take that and look at the allegations of the complaint, and they do allege vicarious liability. So there's no question that they provided coverage for Dr. Pilker's acts because there's two classes of people. So that's the whole point. There is a minimum, an ambiguity here, of what they mean by are any person for whose acts the insured is legally responsible. So the question is, what in the complaint made it so clear that they could walk away from this and not defend or file a death action? They're relying on all these things outside of the complaint, and the rules in Illinois say if it's not clear from the face, if there's any doubt at all, you have to defend under a reservation or file a death action. If you don't, which they did not, they're stopped. So I feel we win just because of the duty of defense, because it was not clear. The other thing is the way the act gets involved is that since they do cover an act that's vicarious, then the reason the section that we quote from the act is important because then they have to go first. Okay? I think another ambiguity that we haven't talked about is that if you look in the insuring agreement, since we're here on page 8, okay, there is a provision there, B3, okay, and that talks exactly, that covers the exact situation we have here. They're saying if a prior company or another company goes in liquidation, then they become excess insurance. That's what they say. They have addressed this specific situation. Not that they don't have coverage, but they have excess. But then you take that in mind and you combine that with the requirements of the fund that they have to go first. That's another ambiguity. The only thing in the provision that really addresses the policy that addresses the mixed situation is B.3. Right? And I get back to this, that they receive premium for the acts of people who are no longer in the practice because that's why they have the retroactive. If that was not the case, they would just say, all right, you have to be listed in the policy, like an insurance policy. I think the other thing that I bring up is the ambiguity, is the idea that I feel that they do fit. Even if you take their argument, is he insured under E? I think there's an ambiguity because he's an employee. When that provision E that we've already talked about, it says employee. It does say other than a physician or surgeon. Right. And he is a physician. That's one interpretation. Well, I'm having a little hard time coming up with another interpretation. Well, here's the other interpretation. What type of surgeon is he? Is he the owner? Is he an independent contractor? All right, what type of employee are we talking about? Is he an employee? Things of that nature. None of those terms are defined. So when the complaint came to them, all it alleged is that he was the agent and employee of a woman's care. That he committed malpractice on a date that falls within their retro date. And the claim was made during the policy period. There was nothing in that complaint that would establish everything they're talking about in the brief and what they've contended for a long time. So the problem is it gets back to, I think, fundamentals on what you do when you have a complaint that doesn't completely exclude the duty to defend. You have to file a death warrant. They did. Let me ask another question just to make sure I understand. You refer to this provision B3 where the excess provision. Basically what you're saying there, I guess, is as to the fund, because of Section 546, I think it is, they cannot be excess. That's correct. In other words, that would be? An application. Okay. And then the other thing I think in regard to the fund when it comes into play, even though it doesn't say the wrongful act, that provision does say this. It says that an insurer or claimant, it's important, I think, under the fund, a claimant shall be required first to exhaust all coverage provided by any other insurance policy. So I think when you get back to this insuring agreement, when they add this extra clause that I keep bringing up, and you combine that with the statutory mandate of the fund, then they have to go first. And I think what the judge really ruled on is that, look, when you look at the underlying complaint, it was not clear, it was not obvious that they did not have a duty to defend. And you can't do that in the state of Illinois. They didn't follow the rules. And it's our job to enforce it. And that's basically what our position is. So I get back to the fact that all these equitable arguments that he wasn't, he didn't fill out an application, you know, he didn't pay extra premium. Well, they received premium because they had this retroactive date that goes all the way back and everything was met. So I think with that said, keeping all the rules of insurance, the bottom line is I think there's numerous reasons why there could have been a duty to defend. It was not clear from the face of the complaint. The fact that they did not defend or follow that action, I think it's just basic. They've waived it. They're stopped. And the trial court's decision should be adjourned. Does anybody else have any questions? No. I appreciate your time. Thank you. Thank you. Rebuttal. Justice Stewart, you hit the nail on the head. We have these named insurers. These are the insurers. The prior acts coverage goes back to those named insurers and for women's care. That's what they bargained for. That's what they bargained for. They could have named Dr. Hucker in there and covered him specifically for tail coverage. Sure, they could have. And Dr. Hucker could have contracted when he started with women's care for that tail coverage. I mean, that happens when Springfield SIU provides that and Springfield Clinic doesn't. Some doctors go to SIU because of it, because it's valuable. Exactly. That's exactly the point. You know, these other points that he's making, ambiguities, I just don't see it. You don't take the case law. It's pretty clear that you don't just come up with creative possibilities for ambiguity. That language in the insurance clause is talking about liability for the insurer, women's care. It has nothing to do with whether or not there's a duty to defend Dr. Hucker, who's not a named insurer. And, you know, the policy itself lists who the insurers are. And it lists the retroactive date. And it lists the cost of the policy. And it lists all of those things. So we're comparing the policy to the underlying complaint. In the underlying complaint, the claim was made when it was filed, period. He wasn't an insurer at that time, period. There's no coverage. So unless the court has any other questions, I have nothing further. Thank you, counsel. Thank you. In case you want to take it under advisement, you'll be notified in due course. That case on the docket is